**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WES JOHNSON,
        *Plaintiff-Appellee,*

v.

WELLS FARGO HOME MORTGAGE,
INC., a California corporation,
DBA America's Servicing
Company; DOES 1 THROUGH 20,
INCLUSIVE,
        *Defendants-Appellants.*

No. 09-15937

D.C. No.
3:05-cv-00321-RAM

WES JOHNSON,
        *Plaintiff-Appellant,*

v.

WELLS FARGO HOME MORTGAGE,
INC., a California corporation,
DBA America's Servicing
Company,
        *Defendant-Appellee.*

No. 09-16815

D.C. No.
3:05-cv-00321-RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert A. McQuaid, Magistrate Judge, Presiding

Argued and Submitted
October 8, 2010—San Francisco, California

Filed February 15, 2011

2491

Before: Stephen Reinhardt and Marsha S. Berzon, Circuit Judges, and Louis H. Pollak, Senior District Judge.*

Opinion by Judge Berzon

---

*The Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## COUNSEL

For Wells Fargo Home Mortgage, Inc.: Daniel F. Polsenberg (argued) and Jennifer B. Anderson, Lewis and Roca LLP, Las Vegas, Nevada.

For Wes Johnson: Tory M. Pankopf (argued), Law Offices of Tory M. Pankopf, Reno, Nevada.

**OPINION**

BERZON, Circuit Judge:

The District Court, believing it was implementing an agreement between the parties, did not review an arbitrator's award when presented with motions to confirm and to vacate the award under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* It instead passed initial review of the award onto this appellate court. We should not, and will not, permit the Congressionally-established structure of the federal courts to be so circumvented. We therefore reverse and remand to allow the lower court to review the arbitrator's award before we do so ourselves. We also address on the merits issues pertaining to Wes Johnson's claims under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*, and the common law of negligence.

## I. THE FACTS AND PROCEDURAL HISTORY

Plaintiff Wes Johnson is a real estate professional who, beginning in the mid-1970's, purchased 200 to 300 properties across the country. Johnson's strategy consisted of purchasing undervalued properties and then refurbishing, renting, and selling them. He financed his ventures by taking out subprime, adjustable-rate mortgages. Johnson's business model was risky, among other reasons because it was highly dependent on his ability to obtain credit. Nonetheless, Johnson avers, he "was going along fine, until my legs were cut out from underneath me, and that was done by Wells Fargo."

In July 2004, Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), doing business as America's Servicing Company, began servicing Johnson's mortgages on two properties, located on Adriatic Avenue and on Fessenden Street, in Portland, Oregon. The parties refer to those loans as loans 55 and 56 respectively, a synecdoche derived from the last two digits of Wells Fargo's account numbers for the loans. In September

2004, Johnson's wife sent in two payments on loan 56 but inadvertently noted on the checks that they were intended to pay off loan 55. Wells Fargo, accordingly, applied the checks to loan 55, which it mistakenly believed was in arrears. As a result of the misapplied payment, loan 56 became delinquent. The arbitrator in this case described the ensuing chain of events as follows:

> [Wells Fargo] contacted Mr. Johnson about the problem, and he assured [Wells Fargo] that both the 55 and 56 loans were current. While he was working with one customer service section of [Wells Fargo], his attempts to juggle financing for his business and personal projects led him to apply for new loans. However, when the prospective lenders ran credit checks, they found that [Wells Fargo] had reported a late payment on the 56 loan.

> Thus began a series of telephone calls and letters by Mr. Johnson to try and get matters straightened out. Part of the problem seems to be the fact that there are multiple sections of staff that deal in customer service for these types of issues, and where a complainant is relegated depends on whether he or she has complained over the telephone (one personnel section), or by letter (another section), or [made] a complaint through a [credit reporting agency] (still another section). Additionally, there are personnel who act as sort of an appellate court, and a foreclosure department that apparently functions in a totally independent fashion. The arbitrator finds that Mr. Johnson had to deal with the "Missing Payment Team," "Customer Relations," "Mortgage Services," and the "Executive Communications Department."

Eventually, the arbitrator found, two Wells Fargo employees "arriv[ed] at the truth" and "admit[ted] [Wells Fargo] had been wrong all along."

But, for Johnson, it was too late. In April 2005, Wells Fargo had commenced foreclosure proceedings on the Fessenden Street property (loan 56), and it had also reported Johnson's supposed delinquencies on both loans to credit reporting agencies. Before the foreclosure sale could take place, Johnson sold both the Fessenden Street and Adriatic Avenue properties and repaid the loans in full. By then, however, according to Johnson, the unfavorable credit reports had already begun to take their toll: Johnson was unable to obtain loans to make new purchases or to refinance existing mortgages. As his credit dried up, Johnson's various business ventures came crashing down. Johnson summed up his view of events to counsel for Wells Fargo in a deposition: "You put me out of business. You cut my income to zero, and that's where I'm at today."

Johnson filed this suit approximately a month after Wells Fargo commenced foreclosure proceedings. He brought claims under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq. ("RESPA"), the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), and the law of negligence (mercifully, no acronym).

After almost a year of discovery, the parties consented to the reassignment of the case, for all purposes, to a magistrate judge.[1] Wells Fargo moved for summary judgment, and the District Court granted its motion as to all of Johnson's claims except his FCRA claim. The Court explained that Johnson's negligence claim, insofar as it was otherwise viable, was preempted by FCRA; that RESPA did not apply to loans 55 or 56 because they were "business purpose loans"; and that FDCPA did not apply because Johnson's debt was "business in nature, not consumer in nature," and that, in any case, Wells Fargo was not a "debt collector" within the meaning of

---

[1]The subsequent references to the rulings of the "District Court" are therefore to the magistrate judge's pronouncements.

the statute. Johnson has filed a cross-appeal of that order as to the dismissal of his RESPA and negligence claims only.

The parties engaged in discovery for a few months more,[2] after which Wells Fargo again moved for summary judgment on Johnson's surviving FCRA claim. The District Court issued a 40-page opinion on that motion. The Court first reiterated its earlier ruling that the question of Wells Fargo's liability under FCRA should go to a jury. It then analyzed Johnson's approximately sixteen theories of damages individually: Most of Johnson's claimed damages related to his inability to secure credit to pursue his business ventures. The District Court held that those damages were therefore not consumer losses recoverable under FCRA. As to some of Johnson's theories of damages, the District Court ruled that Johnson had failed to put forward any evidence linking his alleged harm to Wells Fargo's erroneous reports to credit reporting agencies. Finally, the District Court denied summary judgment as to approximately six of Johnson's theories of damages and set the case for trial. After a different magistrate judge held a settlement conference three weeks before the trial's scheduled start date, the parties stipulated to binding arbitration of Johnson's FCRA claim. The District Court entered the parties' stipulation as an order.

What exactly that stipulation and order meant to provide, and what it lawfully could provide, are among the central issues raised by this appeal. For now, suffice it to say that the stipulation stated that the "parties shall participate in a binding arbitration with appeal rights"; that the Federal Rules of Evidence and Civil Procedure, as well as "the Federal Arbitration Act . . . shall apply to the arbitration proceedings"; and

---

[2] During this time, Wells Fargo accused Johnson of having destroyed documents in discovery. The District Court awarded Wells Fargo a jury instruction that would ask the jury to decide if any documents were destroyed and would create an inference that any destroyed documents were favorable to Wells Fargo. Johnson has appealed that sanction order.

that, within thirty days after the arbitrator made an award, either party would be able to apply to the court for an order confirming the award in accordance with the Federal Arbitration Act ("FAA").

By mutual agreement, the parties selected Michael Nott, a retired justice of the California Court of Appeal, as the arbitrator. According to the terms of the stipulation, Justice Nott was to be bound by all previous rulings of the District Court. He was to resolve the remaining questions in the case, namely: (1) whether Wells Fargo was liable to Johnson under FCRA; (2) whether Johnson's remaining categories of claimed damages were "losses [he suffered] as a consumer, and not . . . business losses"; (3) whether those damages were caused by Wells Fargo's violations of FCRA; and (4) the extent of any such damages.

Justice Nott found that Wells Fargo had violated FCRA and that Johnson should recover on approximately half of his remaining categories of claimed damages. Justice Nott awarded Johnson a total of $260,910 in damages, including $100,000 for emotional distress, as well as $464,808.11 in attorneys' fees, and $37,069.15 in costs.

After the arbitrator made his award, Johnson moved the District Court to confirm it. Wells Fargo then informed the District Court of an arithmetical error in the arbitrator's calculations. At a telephonic status conference on the motion, counsel for Wells Fargo told the District Court "Wells Fargo does intend on appealing this arbitrator's award, asking you to modify or vacate the award. So, how will — how do you want to deal with that?" The District Court responded by saying it would not review the arbitrator's award and that Wells Fargo should take its objections to the Court of Appeals. In the Court's words: "Well, it's my understanding that what you stipulated to was, that everybody stipulated, that following this arbitration award, if somebody wanted to, they could take it directly to the Ninth Circuit." Counsel for Wells Fargo pro-

tested, pointing out that the stipulation read " 'unless this Court vacates, modifies or corrects.' So that was where I got the fact that I didn't know if we would have to file something with you before, you know – – " Magistrate Judge McQuaid interjected: "Oh, I don't believe so, because I'm going to enter this judgment today." He entered judgment and an order confirming the award later that day.

Shortly thereafter, Wells Fargo filed a motion to vacate, modify, or amend the award pursuant to Fed R. Civ. P. 52(b), 59(e) and 60(b), and a second motion to vacate or modify the award pursuant to the Federal Arbitration Act, contending that the arbitrator "demonstrated a manifest disregard for law." The District Court was not pleased by the motions, pronouncing that it was "not only mystified, I'm a little miffed about what's going on here." The Court explained that it believed the parties had agreed to arbitration with "appeal rights," and, in the Court's understanding,

> that meant . . . following the arbitration the Court would approve the arbitrator's award, enter judgment, and whichever party was unhappy at that point could appeal the record to the Ninth Circuit, and the issues would not be raised with the district court, and all the parties agreed that all issues would be preserved for the Ninth Circuit.

As it explained, the District Court understood that after it ordered the arbitration, the parties would "get the arbitrator's decision, the Court [would], in essence, rubber stamp the arbitrator's decision, and whichever party [was] unhappy [could] then appeal it directly to the Ninth Circuit."

Both parties timely appealed.

## II.   WELLS FARGO'S APPEAL

Wells Fargo's appeal raises two related questions about the judicial review of arbitral awards: First, can judicial review of

arbitral awards begin in a federal court of appeals? Apparently assuming this initial question can only be answered "yes," neither party has addressed it. Because we believe the question implicates this Court's jurisdiction as well as the appropriate division of labor between trial and appellate courts, we raise it *nostra sponte*, answer it in the negative on non-jurisdictional grounds, and remand to the District Court with instructions to review the arbitrator's award. *See Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009).

The second question goes to the standard of judicial review: As we are remanding for the District Court to review the arbitrator's award, and as the parties dispute the standard on which a court should review that award, we explain what the proper standard is. Specifically, Wells Fargo contends that the parties agreed, and the District Court ordered, that the arbitrator's award would be reviewed according to the same standards applied to a bench trial. We do not reach the question whether the parties or the District Court *could* provide for such a standard of judicial review; we conclude only that they did not, and that the ordinary standard of review under the Federal Arbitration Act applies.

Before embarking on our analysis, we note that some states have instituted procedures that allow parties to select and compensate a private individual at the trial court level, that is, an arbitrator whose rulings are directly reviewed by appellate courts as if they were decisions of a trial court. *See* Cal. Code Civ. Proc. §§ 638 *et seq.*; Tex. Civ. Prac. & Rem. Code §§ 151.001 *et seq.*; Supreme Court of Nevada, Order of June 23, 2010, In the Matter of the Amendment of the Nevada Short Trial Rules to Provide for Alternate Trials, ADKT No. 447. As Wells Fargo acknowledges, its argument that this Court of Appeals should review the arbitrator's award in the first instance and on the same standard as it would review a bench trial amounts to asking this Court to sanction such a practice in the federal system. Our holding today makes clear

that we will not permit a privately-selected arbitrator to act as a private judge whose rulings are directly reviewed by this Court. And this is so even if the parties stipulate to such a role for the arbitrator.

## A.

The first question, as noted, is whether the District Court could properly decline to review the arbitrator's award but nonetheless enter an order confirming that award in the expectation that review would begin in this Court. We conclude that it could not. Although we also conclude that this procedural error does not deprive this Court of jurisdiction, we decline to review the arbitrator's award ourselves and then affirm or reverse the District Court's order on the alternative ground of the award's substantive merits. Instead, we exercise our power to remand the case to the District Court with directions to rule on the motion to vacate, as it should have done in the first instance.

## 1.

**[1]** The parties allege that this Court has jurisdiction pursuant to 28 U.S.C. § 1291. That familiar statute gives this Court jurisdiction "of appeals from all final decisions of the district courts . . . ." This Court assuredly does not have jurisdiction over an appeal taken directly from a private arbitrator. "[T]wo things are necessary to create jurisdiction" in an inferior federal court: "[t]he Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it." *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1408 (9th Cir. 1989) (quoting *The Mayor v. Cooper*, 73 U.S. 247, 252 (1867)). No act of Congress supplies a federal court of appeals with jurisdiction to review an arbitrator's award directly, similar to the direct jurisdiction we do have over many petitions for review of federal agency action. *See, e.g.*, 21 U.S.C. § 360g; 29 U.S.C. § 660(a); 33 U.S.C. § 1369(b).

**[2]** Because there is no direct appellate jurisdiction over arbitral awards, when this Court reviews arbitrators' decisions, it is technically reviewing a district court's decision confirming or vacating an arbitrator's award. *See, e.g.*, *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009). In such cases, this Court has jurisdiction under 28 U.S.C. § 1291. *See, e.g.*, *id.* at 1101; *see also* 9 U.S.C. § 16(a) (setting forth orders relating to arbitration from which "[a]n appeal may be taken"). The Court does review such district court decisions de novo (and so, in effect, directly engages with the arbitrator's ruling on its own terms), *see Johnson v. Gruma Corp.*, 614 F.3d 1062, 1065 (9th Cir. 2010), but the interposed "final decision" of the district court is nonetheless essential to this Court's jurisdiction under § 1291.

In this case, the district judge refused to hear Wells Fargo's motion to vacate the arbitrator's award, because he believed that his role was "in essence, [to] rubber stamp the arbitrator's decision." After that, the District Court believed, "whichever party [was] unhappy [could] then appeal [the arbitrator's decision] directly to the Ninth Circuit." But the District Court did, in fact, enter orders confirming the arbitrator's award and denying Wells Fargo's motion to vacate the arbitrator's award. Because the District Court has also entered judgment in the case, there can be no doubt that this Court has jurisdiction over the District Court's orders and has the power to reverse or affirm them.

A different, and slightly more difficult, question is the following: Once we conclude, as we do, that the District Court's decision not to review the arbitrator's award was erroneous, should we review the arbitrator's award and then reverse or affirm the District Court's confirmation of the award, considering on their merits the grounds for vacating the award that the District Court did not address? Such affirmance (or reversal) of the District Court on the alternate ground that the arbitrator's decision merited (or did not merit) confirmation would, as a practical matter, work a circumvention of the

jurisdictional statutes that generally limit this Court to deciding appeals of district court decisions (or petitions for review of agency determinations). For if we reviewed the arbitrator's award to determine whether there is an alternative basis for upholding the District Court's confirmation of the award, we would give effect to precisely what the District Court improperly intended: judicial review in the first instance in the Court of Appeals.

**[3]** To avoid the circumvention just described, we will not now review the award in the first instance, but remand to the District Court for it to do so. Before we explain the basis for so proceeding, we address the two reasons it was procedurally improper for the District Court to decline to review the arbitrator's award: First, the parties did not agree to such a procedure; and, second, even if they had, neither the District Court nor the parties were empowered to authorize it.

**2.**

**[4]** Read as a whole, the parties' agreement to arbitrate does not provide that judicial review of the arbitration award was to take place pursuant to any procedure other than the standard one under the Federal Arbitration Act. The Federal Arbitration Act provides in part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. Section 10 of the FAA provides that "the United States court in and for the district wherein the award was

made may make an order vacating the award upon the application of any party to the arbitration" in any of four enumerated situations. In similar terms, Section 11 permits district courts to "modify[ ] or correct[ ]" an award in any of three enumerated situations.

Here, the parties' stipulation and agreement to arbitrate provides that the parties may apply to "this Court" for an order confirming the arbitration award "in accordance with the provisions of the Federal Arbitration Act." The agreement was filed with the District Court and begins with the caption "UNITED STATES DISTRICT COURT DISTRICT OF NEVADA," so there can be no doubt as to what is meant by "this Court." The agreement's explicit reference to the Federal Arbitration Act as governing judicial review of the arbitral award and its designation of the U.S. District Court for the District of Nevada as the court where that review should begin, demonstrate that the District Court—the "court so specified," 9 U.S.C. § 9—not the Court of Appeals, was to confirm the arbitrator's award "unless the award is vacated, modified, or corrected."[3] *Id.*

---

[3]We further note that the FAA, by its terms, supplies only *district* courts with the authority to vacate and modify arbitral awards. *See* 9 U.S.C. § 10 (providing that "the United States court in and for the district wherein the award was made" may vacate an arbitrator's award under certain circumstances); 9 U.S.C. § 11 (same for modification of arbitral awards). Section 9 of the FAA, pertaining to confirmation of arbitral awards, is possibly more ambiguous. Once again, it provides that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award.

9 U.S.C. § 9.

We need not determine whether this provision allows for anything more than a choice of venue among different districts, *see generally Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193 (2000), because the

Clear as the arbitration agreement's provisions are when read as a whole, Wells Fargo raises an inventive argument, which we next address.[4] The contention is that the District Court exercised its case management authority, under the Federal Rules of Civil Procedure and the Nevada District Court's Local Rules, to authorize a departure from the ordinary process of judicial review of arbitral awards. If this were so, then the parties' agreement may not be dispositive of how judicial review of the arbitration award was to proceed.

In *Hall Street Associates v. Mattel, Inc.*, 552 U.S. 576 (2008), the Supreme Court speculated that an arbitration agreement entered into in the course of litigation and adopted by a district court as an order might "be treated as an exercise of the District Court's authority to manage its cases under Federal Rule[ ] of Civil Procedure 16." *Id.* at 591. If so, the Supreme Court hypothesized, the FAA might not provide the exclusive permissible standard for judicial review of arbitration awards. *See id.* at 591-92.[5]

**[5]** Wells Fargo argues that "the arbitration agreement here embodies the very alternative contemplated by *Hall Street*," contending that the District Court authorized the arbitration pursuant to its "independent case management powers under

parties unambiguously selected the U.S. District Court for the District of Nevada as the court where confirmation of the award should be sought. Moreover, quite apart from what is procedurally proper under the FAA, a federal court of appeals might well lack jurisdiction over an application to confirm an arbitration award filed directly with the court of appeals. *See Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 581-82 & 582 n.2 (2008) (noting that the FAA does not "bestow[ ]" jurisdiction, "but rather requir-[es] an independent jurisdictional basis").

[4]As previously mentioned, neither party directly briefed the propriety of judicial review commencing in the court of appeals. Nonetheless, Wells Fargo's argument as to the proper standard of judicial review has implications for the propriety of skipping district court consideration.

[5]We discuss *Hall Street* in greater detail in Section II.B, *infra.*

the federal and local rules, including Rules 16, 53 and Nevada Local Rule 16-5."[6] This thesis, clever though it may be, has no basis in the record: The District Court did not once reference its independent case management powers in approving the arbitration agreement or in confirming the resulting award. This omission alone makes Wells Fargo's "case management" assertion dubious. Entirely fatal to that assertion is that under the Federal Rules of Civil Procedure, a district court only has the power "to manage *its* cases." *Hall St.*, 552 U.S. at 591 (emphasis added). Nothing in Federal Rules of Civil Procedure 16 or 53, much less Nevada Local Rule 16-5,

---

[6]Fed. R. Civ. P. 16 provides, *inter alia*, that:

> At any pretrial conference, the court may consider and take appropriate action[, including] . . . (H) referring matters to a magistrate judge or a master; (I) settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule; . . . (L) adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems; . . . (P) facilitating in other ways the just, speedy, and inexpensive disposition of the action.

Fed. R. Civ. P. 53 provides, *inter alia*, that:

> Unless a statute provides otherwise, a court may appoint a master only to:
>
> > (A) perform duties consented to by the parties;
> >
> > (B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:
> >
> > (i) some exceptional condition; or
> >
> > (ii) the need to perform an accounting or resolve a difficult computation of damages; or
> >
> > (C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

Nevada Local Rule 16-5 provides that "[t]he court may, in its discretion and at any time, set any appropriate civil case for settlement conference, summary jury trial, or other alternative method of dispute resolution."

grants a district court the power to override the basic structure of federal courts by passing off cases to a court of appeals without itself conducting the review contemplated by statute. The District Court was therefore without power to abdicate entirely its role in reviewing the arbitrator's award, either because of the terms of the parties' agreement or under the applicable court rules.

**[6]** Finally, we note that, despite the FAA's use of the seemingly permissive term "may," the statute did not grant the District Court discretion to decline to consider the motion to vacate the arbitral award. Section 10 of the FAA provides that a district court "*may* make an order vacating" an arbitral award in any of four enumerated circumstances. 9 U.S.C. § 10(a) (emphasis added). Although "[t]he word 'may[ ]' . . . usually implies some degree of discretion[, t]his common-sense principle of statutory construction . . . can be defeated . . . by obvious inferences from the structure and purpose of the statute." *United States v. Rodgers*, 461 U.S. 677, 706 (1983); *see Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 198 (2000) ("[T]he mere use of 'may' is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority.").

**[7]** Here, the statute as a whole defeats any notion that district courts may decline to consider motions to vacate, modify, or correct arbitration awards filed in response to a motion to confirm. Section 9 of the FAA provides that a district court, upon timely application, "must" confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. If § 10's use of "may" were read as permitting a district court, at its discretion, not to consider a motion to vacate an arbitral award, it would follow that Congress authorized district judges to confirm, at their discretion, awards that met the statutory standard for vacatur (for example, "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1)). But Congress could not have meant to authorize district courts to

confirm corrupt awards, especially where one of the parties had properly objected to the award's illegality. Thus, on the only sensible combined reading of § 9 and § 10, a district judge faced with proper and timely motions to vacate and to confirm an arbitral *must* consider both motions according to the statutory standards and rule on them accordingly.[7]

## 3.

We have explained why the District Court erred in not reviewing the arbitrator's award. We have also explained that the error does not deprive this Court of jurisdiction. We now explain why we have raised this procedural error even though neither party has raised it and our ordinary rule is that "non-jurisdictional issues not properly raised in appellate briefing will not be considered." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc). We also clarify the nature of our authority to decline to review the award ourselves in the first instance, even though we review district court rulings concerning such awards de novo when they are properly before us.

The problem we face is similar to, although not exactly parallel to, the one considered by the Supreme Court in *Thomas v. Arn*, 474 U.S. 140 (1985). *Thomas* upheld the Sixth Circuit's exercise of its supervisory powers to establish the rule that failure to file a written objection to a magistrate's report with a district judge would bar appellate consideration of the objection.[8] Weighing in favor of the rule's validity, the

---

[7]We have no occasion to decide whether § 10's use of "may" has some other significance. "[M]ay make an order vacating," followed by the list of permissible bases for such an order, could portend only that an order vacating "may" be made in the circumstances specified, but not in any other. Alternatively, as the Supreme Court has suggested, Congress's use of the word "may" might only indicate the permissive nature of venue under the FAA. *See Cortez Byrd*, 529 U.S. at 198-99, 204.

[8]The supervisory powers of the federal courts of appeals include "the power . . . to mandate procedures deemed desirable from the viewpoint of

Supreme Court noted, was the fact that, absent the rule, a court of appeals might be forced to "consider claims that were never reviewed by the district court . . . ." *Id.* at 148. The Supreme Court described this concern as one of judicial efficiency, *id.*, using that concept in a broad sense—that is, as not only promoting the use of fewer judicial resources but as also incorporating the appropriate division of the appellate and trial court functions.

**[8]** Our decision not to review the arbitrator's award ourselves is motivated by similar concerns about the appropriate division of appellate and trial court roles. As *Thomas*'s analysis suggests, courts of appeals "are entitled to the benefit of the district court's judgment . . . ." *Beckford v. Portuondo*, 234 F.3d 128, 130 (2d Cir. 2000); *see also Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1081 (9th Cir. 2000) ("Appellate review is a particularly difficult process when there is nothing to review."). But unlike in *Thomas*, we need not invoke our supervisory powers to *create* the rule that a district court is obliged to consider the propriety of an arbitration award when faced with proper motions to confirm and vacate the award under the FAA; the FAA, as we have explained, already imposes that duty. But just as in *Thomas*, we have the power—whether it be termed "supervisory" or otherwise—to "regulate practice in a particular case," Fed. R. App. P. 47(b), and so to decline to hear an appeal when that obligation is not fulfilled.

**[9]** Here, the fault in the district court was not that of the appealing party, Wells Fargo. So it would not do to refuse to hear the appeal entirely, as the Sixth Circuit did in *Thomas*.

---

sound judicial practice although in nowise commanded by statute or by the Constitution." *Thomas*, 474 U.S. at 146-47 (quotation omitted); *see also* Fed. R. App. P. 47(b) (permitting a court of appeals to "regulate practice in a particular case in any manner consistent with federal law"). This supervisory power of the courts of appeals "rests on the firmest ground when used to establish rules of judicial procedure." *Thomas*, 474 U.S. at 147 n.5.

Instead, we remand the case to the District Court to obtain its judgment. This Court and other courts of appeals have similarly remanded to a district court where "a district court's decision . . . is simply too spare to serve as a basis for . . . review," *Beckford*, 234 F.3d at 130, even where the court of appeals ordinarily would review the district court's decision de novo. *See, e.g.*, *id.* (summary judgment); *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 341 (2d Cir. 2010) (summary judgment); *Van Bourg, Allen, Weinberg & Roger v. NLRB*, 656 F.2d 1356, 1358 (9th Cir. 1981) (per curiam) (summary judgment); *Valdez v. California*, 439 F.2d 1405, 1406 (9th Cir. 1971) (per curiam) (habeas corpus); *Finley v. Drew*, 453 F.2d 1240, 1240 (3d Cir. 1971) (per curiam) (habeas corpus); *see also Jang v. Boston Scientific Corp.*, 532 F.3d 1330, 1335 (Fed. Cir. 2008) (collecting cases).

Here, the District Court's decision is not simply "spare"; it is purposely non-existent: The District Court expressly stated that it would not review the arbitrator's award. We therefore vacate the judgment and remand the case with instructions for the District Court to reconsider the motions to confirm and to vacate the arbitrator's award under the appropriate standard of review, which as we now explain, is the ordinary standard of review under the FAA.[9]

---

[9]We also reject Johnson's contention that Wells Fargo failed timely to object to confirmation of the arbitrator's award. Counsel for Wells Fargo stated its intent to file a motion to vacate at the telephonic status conference on Johnson's motion to confirm the award. The Court emphatically replied that there was no point in doing so, as the District Court would not review the arbitrator's award before confirmation; that Wells Fargo should take its objection to the Court of Appeals; and that the District Court was going to—and then did—confirm the award and enter judgment that same day. On reconsideration, the District Court reiterated that it never intended to review on the merits any substantive issue concerning the validity of the arbitration award. It is therefore evident that the District Court made no adverse timeliness ruling, and that no substantive objection to the award, whenever raised, would have been entertained on its merits.

**B.**

The parties also dispute the standard on which a court should review the arbitrator's award in this case.

**[10]** The Federal Arbitration Act sets forth standards on which a federal court may vacate an arbitrator's award. The Act provides in pertinent part:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> > (1) where the award was procured by corruption, fraud, or undue means;
> >
> > (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> >
> > (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> >
> > (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. As is apparent from the language, these standards are highly deferential to the arbitrator.

**[11]** Here, Wells Fargo moved the District Court to vacate the arbitrator's award on the ground the arbitrator "demonstrated a manifest disregard for law." Although the words "manifest disregard for law" do not appear in the FAA, they have come to serve as a judicial gloss on the standard for vacatur set forth in FAA § 10(a)(4). *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc); *Bosack*, 586 F.3d at 1104; *see also Hall St.*, 552 U.S. at 585.[10]

As to whether private parties may vary that standard, we concluded in an en banc decision, *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987 (9th Cir. 2003), that they may not. The Supreme Court later in large part agreed, but left open for future decision whether judicial review of arbitration awards may ever be subjected to a standard other than those provided by the FAA.

Specifically, *Kyocera* held that "Congress [in the FAA] has specified the exclusive standard by which federal courts may review an arbitrator's decision . . . [and, therefore,] private parties may not contractually impose their own standard on the courts." 341 F.3d at 994.

In *Hall Street*, the Supreme Court largely adopted *Kyocera*'s conclusion, holding that the FAA has "textual features at odds with enforcing a contract to expand judicial review following the arbitration." 552 U.S. at 586. But, as previously discussed, the Court qualified that holding, noting that "we do not purport to say that [the FAA] exclude[s] more searching

---

[10]Courts may also vacate awards that are "completely irrational . . . with respect to the contract." *Bosack*, 586 F.3d at 1107; *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009). For reasons not entirely apparent, we have understood that standard as another, separate gloss on the standard set forth in FAA § 10(a)(4). *See Kyocera*, 341 F.3d at 997. Because Wells Fargo did not move to vacate the award on the ground that it was completely irrational, we confine our discussion to the manifest disregard standard.

review based on authority outside the statute." *Id.* at 590. The Court surmised that because the arbitration agreement in the case before it had been entered into in the course of litigation and had been adopted by the district court as an order, it was possible that the "agreement [should] be treated as an exercise of the District Court's authority to manage its cases under Federal Rule[ ] of Civil Procedure 16." *Id.* at 591. Because potentially authorized other than pursuant to the FAA, judicial review of such an arbitral award might conceivably be more searching than that pursuant to the FAA. The Supreme Court noted the question "implicate[d] issues of waiver and the relation of the FAA both to Rule 16 and the Alternative Dispute Resolution Act of 1998," *see* 28 U.S.C. § 651, and remanded the question, "express[ing] no opinion on these matters." *Hall St.*, 552 U.S. at 592.[11]

Wells Fargo argues that "the arbitration agreement here embodies the very alternative contemplated by *Hall Street*." The company contends that, as in *Hall Street*, the agreement

---

[11]We note that the Supreme Court later expressed some doubt as to whether the " 'manifest disregard' [standard] survive[d] [its] decision in *Hall Street* . . . ." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1768 n.3 (2010); *cf. Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) ("abandon[ing] and reject[ing]" the "manifest disregard" standard). But in this Circuit the "manifest disregard" standard has survived *Hall Street* intact, and so we are bound to apply it. *See Comedy Club*, 553 F.3d at 1290-91.

For purposes of this case, we also assume, without deciding, that *Hall Street* constitutes intervening authority with regard to *Kyocera*'s conclusion that "a federal court may *only* review an arbitral decision on the grounds set forth in the Federal Arbitration Act . . . ." *Kyocera*, 341 F.3d at 1000 (emphasis added). Finally, we observe that, although *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167 (9th Cir. 2010), stated that *Hall Street* "ruled that § 10 lists the exclusive grounds for vacating an arbitration award," *id.* at 1173, that statement necessarily meant that § 10 lists the exclusive grounds for vacating an arbitration award *under the FAA*. *Hall Street* did, as noted in the text, leave open the possibility of a different standard of review "based on authority outside the statute." 552 U.S. at 590.

to arbitrate was entered into in the course of litigation; it also contends that the District Court "explicitly approved the parties' agreement subject to full judicial review," and that the District Court was authorized to ensure "full judicial review" "by its independent case management powers under the federal and local rules, including Rules 16, 53 and Nevada Local Rule 16-5."

Whatever the merits of the Fed. R. Civ. P. 16 theory as to which *Hall Street* speculated, it does not apply to this case. Wells Fargo's argument, even if otherwise viable, is untenable in the face of the parties' stipulation and the District Court's statements.[12]

**[12]** The parties' stipulation to arbitrate expressly provides that "the FAA . . . shall apply to the arbitration proceedings." The stipulation then largely incorporates the language of the FAA in describing how the District Court, upon application by the parties, "must" enter an order confirming the arbitration award "unless this Court vacates, modifies or corrects the arbitration award, and enter a judgment in accordance with the provisions of the Federal Arbitration Act." *See* 9 U.S.C. § 9 (using similar language). Nothing in the agreement suggests that anything other than the ordinary FAA standard of judicial review should apply.

Wells Fargo points out that the stipulation provides that "the parties shall participate in a binding arbitration *with appeal rights*." (Emphasis added). But the phrase "appeal rights" says nothing about the standard of review. After all, parties have a right to judicial review, including appellate review, under the FAA, but that review is only for manifest

---

[12]We, like the Supreme Court, therefore express no opinion as to the viability of the case-management theory of judicial review of arbitration awards alluded to in *Hall Street*.

disregard of the law by the arbitrator, or for one of the other highly deferential standards contained in the statute.[13]

Moreover, the District Court did not once cite, or by implication refer to, its case management authority under the Federal Rules in adopting the stipulation as an order, and never indicated any intent to vary the standard of review. As the alternative thesis suggested in *Hall* depends on the district court's invocation of its case management authority under Rule 16 to vary the review standard, the thesis has no application here.

Wells Fargo also suggests that the "arbitrator memorialized the parties' agreement [concerning the standard of judicial review] in his award," and that his recitation may have relevance here. The arbitrator did state in his written opinion that, under the parties' agreement to arbitrate, "the parties will retain the same appellate rights that they would be afforded under Federal law had they gone to a court or jury trial." This statement is the only record support for Wells Fargo's position that the standard of appellate judicial review of the arbitrator's award was meant to be the same as the review of a bench trial.

But the statement cannot carry any weight. The parties never manifested an intent for the arbitrator to decide the standard of judicial review nor does Wells Fargo argue they did (or that their doing so would have any relevance). The District Court similarly did not delegate to the arbitrator authority to decide the scope of judicial review. The arbitrator's views on

---

[13]One plausible explanation of the phrase "appeal rights" is that it was inserted to make clear that the bar on appeal in the Alternative Dispute Resolution Act, 28 U.S.C. §§ 651 *et seq.*, was not intended to apply to the confirmation of the arbitration award. *See* 28 U.S.C. § 657(a) (providing that when a district court confirms an arbitration award pursuant to the Alternative Dispute Resolution Act, "the judgment shall not be subject to review in any other court by appeal or otherwise").

the standard by which courts would review his decision are therefore irrelevant.

**[13]** In sum, there is just no persuasive evidence that the District Court or the parties intended the arbitrator's award to be subject to anything other than the standard of judicial review provided by the FAA. We therefore hold that the District Court should apply those standards on remand.

## III.   JOHNSON'S CROSS-APPEAL

Johnson cross-appeals the District Court's grant of summary judgment to Wells Fargo on his claims under the Real Estate Settlement Procedures Act and the common law of negligence. For the reasons discussed below, we affirm.

### A.

Congress enacted the Real Estate Settlement Procedures Act in 1974 to protect consumers from abusive practices in mortgage closings. *See Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1008 (9th Cir. 2002). Wells Fargo's position, accepted by the District Court, is that Johnson did not take out loans 55 and 56 as a consumer and, therefore, RESPA does not apply. We agree.

**[14]** RESPA does not "apply to credit transactions involving extensions of credit . . . primarily for business, commercial, or agricultural purposes . . . ." 12 U.S.C. § 2606(a). To determine what it means for a loan to be "primarily for a business . . . purpose" requires an expedition through the Code of Federal Regulations.

**[15]** The journey begins with so-called Regulation X, 24 C.F.R. § 3500.5, which provides in part:

> (a) RESPA and this part apply to all federally related mortgage loans, except for the exemptions provided in paragraph (b) of this section.

(b) Exemptions

. . .

(2) Business purpose loans. An extension of credit primarily for a business, commercial, or agricultural purpose, as defined by Regulation Z, 12 C.F.R. 226.3(a)(1). Persons may rely on Regulation Z in determining whether the exemption applies.

The parties do not dispute that loans 55 and 56 are "federally related mortgage loans." *See* 12 U.S.C. § 2602(1) (defining "federally related mortgage loan"). Thus, following Regulation X's guidance, we look to Regulation Z to determine if loans 55 and 56 were "business purpose loans."

**[16]** Regulation Z, 12 C.F.R. §§ 226.1 *et seq.*, "is [a regulation] issued by the Board of Governors of the Federal Reserve System to implement the federal Truth in Lending Act." 12 C.F.R. § 226.1. The provision of Regulation Z explicitly referenced by Regulation X provides only that Regulation Z does not apply to "[a]n extension of credit primarily for a business, commercial or agricultural purpose." 12 C.F.R. § 226.3(a)(1). In other words, Regulation Z does not define "a business . . . purpose" loan; it just recites the same terms also contained in Regulation X.

The interpretations of § 226.3 in the Official Staff Commentary on Regulation Z are much more expansive. *See* 12 C.F.R. Pt. 226, Supp. I. We have been directed to treat these official staff interpretations of Regulation Z as controlling "[u]nless demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980); *see Chase Bank USA, N. A. v. McCoy*, No. 09-329, Slip Op. at 16 (U.S. Jan. 24, 2011).

**[17]** Doing so, we find the staff interpretations dispositive. One part of the Commentary is directly applicable to loans 55 and 56. That portion provides in pertinent part:

4. Non-owner-occupied rental property. Credit extended to acquire, improve, or maintain rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes. . . .

12 C.F.R. Pt. 226, Supp. I, Cmt. 3(a)(4) (West 2011). Johnson does not dispute that the properties on Adriatic Avenue and on Fessenden Street were non-owner-occupied rental properties. Loans 55 and 56, the mortgages on those properties, thus fall within Regulation Z's definition of a business-purpose loan, and, so, RESPA does not apply to them.

There is certainly nothing "demonstrably irrational" in regarding a loan to acquire, improve, or maintain non-owner occupied rental property as a loan for a business purpose. That conclusion should be—indeed, is—the end of the matter. But Johnson makes a number of contentions to the contrary, which we address in turn and, in turn, reject.

### 1.

First, Johnson argues that the Court, in interpreting Regulation X, should not look to the Official Staff Commentary on Regulation Z because (1) the latter is not part of Regulation Z, and (2) the Federal Reserve Board, in issuing the official staff interpretations, did not intend to interpret RESPA, but, instead, intended only to interpret the Truth in Lending Act. Neither of these contentions has merit.

In directing those seeking a definition of the term "primarily for a business . . . purpose" in Regulation X to Regulation Z, Regulation X necessarily includes a direction to the staff interpretations of Regulation Z. Regulation Z itself does not expand at all on Regulation X's use of the phrase "primarily for a business . . . purpose," but the staff interpretations do. So if Regulation X did not incorporate the staff interpretations

of Regulation Z, its reference to Regulation Z would, as a practical matter, accomplish exactly nothing.

Further, Congress explicitly required that agency regulations ensure that RESPA's exemption for "credit transactions involving extensions of credit primarily for business . . . purposes" "be the same as the exemption . . . under [the Truth in Lending Act]." 12 U.S.C. § 2606(b). Because Regulation Z implements the Truth in Lending Act, *see* 12 C.F.R. § 226.1, and Congress has mandated that the business-purpose exemption under RESPA be the "same as" as that under the Truth in Lending Act, it does not matter whether the Federal Reserve Board "intended" to interpret RESPA in issuing Regulation Z. What matters is Congress's expressed intent in enacting RESPA, and RESPA's regulation implementing that intent.

**2.**

Next, Johnson seizes upon a variation within the statutory and regulatory language and attempts to wrench meaning out of it. While the identified variation in language may be meaningful in some circumstances, it has no significance for our purposes.

Johnson begins by observing that Regulation X first identifies RESPA as applying "to all federally related mortgage loans, except for the exemptions provided in paragraph (b) of this section." 24 C.F.R. § 3500.5(a). Paragraph (b) of that section then lays out a number of scenarios to which RESPA does not apply, including the exception for "[*a*]*n extension of credit* primarily for a business, commercial, or agricultural purpose . . . ." 24 C.F.R. § 3500.5(b)(2) (emphasis added). The business-purposes exception provision in Regulation Z uses the same language as that in Regulation X. *See* 12 C.F.R. § 226.3 (providing that Regulation Z does not apply to "[*a*]*n extension of credit* primarily for a business, commercial or agricultural purpose") (emphasis added). RESPA itself, how-

ever, uses the same language but adds the summary term "credit transactions": It provides that the statute does not apply to "*credit transactions involving extensions of credit . . .* primarily for business, commercial or agricultural purposes." 12 U.S.C. § 2606(a) (emphasis added). The term "credit transaction" does not appear anywhere in RESPA other than the provision of the statute setting out the business purpose exemption. The term "federally related mortgage loan," by contrast, appears throughout RESPA.[14]

But after pointing to these differences in language, Johnson's argument sputters out. True, courts ordinarily apply a presumption that variations in statutory language are meaningful. *See, e.g.*, *Corley v. United States*, 129 S. Ct. 1558, 1567 (2009). But here, although the statutory exemption (i.e., "credit transactions involving extensions of credit") may be broader than the general statutory coverage (i.e., "federally related mortgage loans"), it cannot possibly be narrower: All federally related mortgage loans are surely credit transactions involving the extension of credit.[15] And the descriptions of the business-purpose exemption in Regulations X and Z, both of which use the term "extension of credit," map onto the statutory exemption for "credit transactions involving extensions of credit": An "extension of credit" is assuredly a "credit transaction involving an extension of credit." The upshot is that the exemptions in RESPA and the two pertinent regulations are co-extensive (if not co-terminous), and all three apply to Johnson's loans.

---

[14]Indeed, almost all of RESPA's substantive provisions state that they apply to federally related mortgage loans (and, by implication, nothing else). *See, e.g.*, 12 U.S.C. §§ 2603(a), 2604(a), 2605(a); 2605(a), 2605(b)(1), 2605(c)(1), 2605(d), 2607(a), 2607(b), 2608(a); *see also* 12 U.S.C. § 2602(1) (defining "federally related mortgage loan").

[15]That the variation between RESPA's general use of "federally related mortgage loan" and § 2606(a)'s use of the phrase "credit transactions" is not of any significance in this case does not mean, of course, that the variation is not of some significance in some other circumstance.

**3.**

Next, and most vigorously, Johnson argues that use of the comments on Regulation Z to interpret Regulation X "automatically amend[s] Section 2602 [of RESPA] by redefining 'federally related mortgage loans.' " The section of RESPA to which Johnson alludes provides that "federally related mortgage loan" refers to mortgages meeting certain requirements and secured by property "designed principally for the occupancy of from one to four families." 12 U.S.C. § 2602. Comment 3(a)(5) of the official staff interpretations of Regulation Z provides, in pertinent part:

> 5. Owner-occupied rental property. If credit is extended to acquire, improve, or maintain rental property that is or will be owner-occupied within the coming year, different rules apply:
>
> i. Credit extended to acquire the rental property is deemed to be for business purposes if it contains more than 2 housing units.
>
> ii. Credit extended to improve or maintain the rental property is deemed to be for business purposes if it contains more than 4 housing units. . . .

12 C.F.R. Pt. 226, Supp. I, Cmt. 3(a)(5) (West 2011). Johnson argues that applying Comment 3(a)(5) to interpret the business-purpose loan exception of RESPA would conflict with other provisions of RESPA.

Once again, the argument does not advance Johnson's cause. Comment 3(a)(5) is inapplicable to loans 55 and 56. The Fessenden Street and Adriatic Avenue properties were not owner-occupied. It is Comment 3(a)(4), not Comment 3(a)(5), that demonstrates that the loans for those properties are for a business purpose.

**4.**

Finally, Johnson argues that Wells Fargo was required to comply with RESPA as a matter of contract. The deeds of trust for loans 55 and 56 both provide that lenders and servicers will abide by many of the requirements of RESPA. Both deeds of trust also state that " 'RESPA' refers to all requirements and restrictions that are imposed in regard to a 'federally related mortgage loan' even if the Loan does not qualify as a 'federally related mortgage loan.' "

Johnson did not plead a claim for breach of contract. After the District Court had ruled on Wells Fargo's second motion for summary judgment and set the case for trial, Johnson moved for leave to amend his complaint to add a claim for breach of contract. The District Court denied the motion as untimely. Johnson does not challenge on appeal the order denying the motion. Johnson's breach of contract claim is therefore not properly raised on this appeal.

**B.**

Johnson also cross-appeals the District Court's grant of summary judgment to Wells Fargo on his common-law negligence claim. The District Court held that Oregon tort law's economic loss doctrine bars Johnson's negligence claim, in part, and that FCRA preempts the remainder. We agree with the former conclusion and reverse the District Court's holding as to the latter.

[18] With regard to the negligence claim, Johnson's complaint alleges only that Wells Fargo "negligently, carelessly, and without reasonable care failed to comply with" RESPA § 2605 and FCRA § 1681s-2. These allegations appear to be invoking one of the exceptions to the Oregon economic loss doctrine. Under that doctrine, Oregon negligence law does not allow recovery of purely economic losses except when there is an injury to person or property or where there is a special

duty to the plaintiff,. *See Lowe v. Phillip Morris USA, Inc.*, 183 P.3d 181, 186 (Or. 2008).[16] Johnson relies on the sections of RESPA and FCRA cited as creating the requisite duty for purposes of Oregon law.

[19] We have looked for Oregon cases premising the statutory duty exception to the economic loss doctrine on a federal, as opposed to a state, statute, and have found none, leaving us skeptical that Oregon law would cross jurisdictions for these purposes. Even if it would, the District Court was certainly correct that the reliance on a duty derived from RESPA cannot suffice. RESPA, as we have explained, created no duty to

---

[16]The parties presume that Oregon law applies, because the choice-of-law clauses in the security instruments for both loans 55 and 56 provide that the "Security Instrument[s] shall be governed by federal law and the law of the jurisdiction in which the Property is located." We agree that Oregon law applies.

A federal court applying state substantive law is bound to follow the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4 (1975). Under Nevada law, Oregon law should determine whether the contractual choice-of-law provisions adopt Oregon law for purposes of a negligence suit. *Engel v. Ernst*, 724 P.2d 215, 216-17 (Nev. 1986); *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1032 & 1032 n.15 (Del. Ch. 2005), *aff'd* 894 A.2d 207 (Del. 2005). But we are aware of no Oregon case or statutory provision indicating whether Oregon courts would read the contractual choice-of-law provisions as incorporating a related tort claim. *See* Or. Rev. Stat. § 81.102 (stating that Oregon's statutory choice-of-law provisions do not apply to any contract to which a financial institution is a party).

Still even if the contractual provisions do not adopt Oregon tort law, Oregon law would apply. Nevada courts follow "the Second Restatement's most significant relationship test [to decide] choice-of-law issues in tort actions unless another, more specific section of the Second Restatement applies to the particular tort." *Gen. Motors Corp. v. Eighth Judicial Dist. Court*, 134 P.3d 111, 116 (Nev. 2006). Under that open-ended test, we would conclude that Oregon has the most significant relationship to the occurrence and the parties. *See* RESTATEMENT (SECOND): CONFLICT OF LAWS §§ 6, 145 (1971).

Johnson with regard to loans 55 and 56 because they were commercial loans.

[20] As to the hypothesis that FCRA could supply the missing duty, the parties agree that the District Court rejected this possibility on the basis of a misreading of the complaint: The District Court thought Johnson's negligence claim was premised on violations of the provisions of FCRA codified at 15 U.S.C. §§ 1681g & 1681h, and held that the claim was therefore preempted under 15 U.S.C. § 1681h(e), the narrower of the two arguably applicable FCRA preemption provisions.[17] In fact, Johnson made no such § 1681g or § 1681h allegations, relying instead on provisions with similar numbering in FDCPA, a different statute. We therefore cannot affirm the District Court's holding regarding FCRA preemption.

[21] We do have authority to affirm district courts on grounds raised below but not reached, *see United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1022 (9th Cir. 2006), but we decline to do so here. The two FCRA preemption provisions are opaque, and as noted, in some tension with each other. *See* note 17, *supra*. The parties appear to us quite possibly to misread the preemption provision they do discuss: Both assume that 15 U.S.C. § 1681h(e) preempts "defamation, invasion of privacy, or negligence" causes of action based on disclosure of information in violation of FCRA §§ 1681g, 1681h, and 1681m, all of which require disclosure of certain information in specified circumstances. But the section actually preempts actions "based on information *disclosed pursuant to*" those sections, 15 U.S.C. § 1681h(e) (emphasis added), saying nothing about any alleged violation of them.

---

[17]The other, considerably broader FCRA preemption provision, 15 U.S.C. § 1681t, is, oddly, not mentioned by either party or by the District Court. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1165-67 (9th Cir. 2009) (discussing the apparent tension between § 1681h(e) and § 1681t, and laying out, without choosing among, possible bases for reconciling the two provisions).

That could mean that there is preemption whether there is a violation of those sections or not, so long as the factual basis of the claim is information disclosed pursuant to the cited language.[18] To decide the preemption claim, we would first have to decide whether that is what § 1681h(e) means, and if so, whether the factual basis for Johnson's negligence claim came from disclosures pursuant to specified sections. As the parties have briefed neither question, we are hard pressed to proceed with Wells Fargo's FCRA preemption challenge beyond concluding that the District Court's basis for rejecting it was in error.

Although Wells Fargo puts forward other bases for affirming the dismissal of the negligence claim, those bases substantially overlap with the issues before the arbitrator and so cannot sensibly be addressed unless and until the arbitration award is final.[19]

## C.

**[22]** Finally we turn to the sanction order. The District Court awarded Wells Fargo a jury instruction after it found that "the evidence . . . tends to show [Johnson] . . . willfully reformat[ted] his hard drives," thereby destroying documents that Wells Fargo was seeking in discovery. The instruction would ask the jury to determine if documents had been destroyed by Johnson and, if the jury so found, the instruction would "creat[e] a presumption in favor of [Wells Fargo] that the spoliated evidence was unfavorable to [Johnson]. . . ."

"We review the district court's imposition of spoliation

---

[18]We are not deciding the meaning of § 1681h(e), but only pointing out that its language is susceptible to such an interpretation.

[19]We note that because Wells Fargo has, as far as we are aware, never contended that Johnson's negligence claim is preempted under FCRA's second, broader preemption provision, § 1681t, we would not reach that question on this appeal in any event.

sanctions for an abuse of discretion. . . . The district court's factual findings, including findings of bad faith and prejudice, are reviewed for clear error." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 957-58 (9th Cir. 2006). "The district court's credibility determinations are entitled to special deference." *Id.* "[W]e do not disturb the district court's choice of sanction unless we have a definite and firm conviction that the district court committed a clear error of judgment." *Id.* at 961 (quotation omitted).

**[23]** We cannot conclude that the District Court abused its discretion or otherwise erred in ordering this sanction. Indeed, the District Court's sanction, which permits the jury to decide if any documents were destroyed when Johnson's hard drives were reformatted, strikes us as precisely the kind of flexible and resourceful sanction order that district judges should be encouraged to craft. We therefore affirm the sanction order.

## IV.   CONCLUSION

**[24]** For the foregoing reasons, we reverse and remand with instructions for the District Court to consider Johnson's motion to confirm the arbitrator's award and Wells Fargo's motion to vacate it under the standards provided by the Federal Arbitration Act. We affirm the District Court's grant of summary judgment to Wells Fargo on Johnson's RESPA claim and on his negligence claim. We also affirm the sanction order.

Each side shall bear its own costs on this appeal.

**AFFIRMED   IN   PART;   REVERSED   AND REMANDED IN PART.**