Filed 8/28/23

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| HOUSING AUTHORITY OF THE CITY OF CALEXICO et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> MULTI-HOUSING TAX CREDIT PARTNERS XXIX, L.P. et al., <br><br> Defendants and Appellants. | D079967 <br><br><br> (Super. Ct. No. ECU000487) |

APPEAL from a judgment of the Superior Court of Imperial County, L. Brooks Anderholt, Judge. Reversed and remanded with instructions.

Law Office of Julie A. Herzog and Julie A. Herzog for Plaintiffs and Appellants.

Cox, Castle & Nicholson, Edward F. Quigley and Cathy T. Moses for Defendants and Appellants.

Housing Authority of the City of Calexico (the Housing Authority) and AMG & Associates, LLC (collectively, the plaintiffs) appeal from a judgment of the superior court confirming an arbitration award, declining to undertake a review of the award on the merits for errors of fact or law (review on the merits) and declining to grant their petition to partially reverse or vacate the award. They contend that the superior court should have undertaken a

review on the merits because the parties had agreed to such a review. They further contend that, had the superior court undertaken such a review, it would have concluded that no substantial evidence supports the award and that the award is contrary to law. Additionally, the plaintiffs contend that, in denying their motion to partially reverse or vacate the award, the superior court left in place a finding by the arbitrator that not only exceeded the arbitrator's powers but works as a forfeiture against the Housing Authority.

Multi-Housing Tax Credit Partners XXIX, L.P., Multi-Housing Investments, LLC, and Highridge Costa Investors, LLC (collectively, the defendants) appeal from the same judgment, but only to the extent it upholds a portion of the arbitration award declining to award them attorneys' fees and costs.

As discussed *post*, we conclude the superior court erred in declining to undertake a review on the merits. In its opinion in *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334 (*Cable Connection*), the California Supreme Court held that an agreement which permitted an arbitration award to be subjected to judicial review on the merits is enforceable. But the court expressed no view as to whether such review may be undertaken in the first instance by the Court of Appeal in lieu of the superior court. We conclude that, in instances in which the parties have agreed that an arbitration award may be subjected to judicial review, it is the superior court and not the Court of Appeal that has original jurisdiction to undertake that review in the first instance, that the superior court is without power to yield that original jurisdiction to the Court of Appeal, and that the superior court should thus have performed the review. On this basis, we reverse the judgment.

We further conclude that the *appellate* jurisdiction of the Court of Appeal empowers the Court of Appeal to undertake a review on the merits in the first instance when (as here) the superior court has failed to exercise its *original* jurisdiction to undertake such a review. However, for reasons expressed in the balance of this opinion, we deem it appropriate to refrain from exercising our appellate jurisdiction beyond reversing the judgment. Hence we remand to the superior court with instructions to undertake the review on the merits that its original jurisdiction obligated it to undertake in the first instance.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute among participants in a project to develop affordable housing within the framework of a federal low-income housing tax-credit program that has been described by some as "the most important source of financing for affordable housing . . . across the nation." (*Homeowner's Rehab, Inc. v. Related Corporate V SLP, L.P.* (Mass. 2018) 99 N.E.3d 744, 748 (*Homeowner's Rehab*).) Although the tax-credit program has been discussed at some length in the parties' briefs, and in further depth in opinions from a variety of courts outside of California (see, e.g., *SunAmerica Housing Fund 1050 v. Pathway of Pontiac* (6th Cir. 2022) 33 F.4th 872; *Riseboro Community Partnership v. SunAmerica Housing Fund 682* (E.D.N.Y. 2020) 482 F.Supp.3d 31; and *Homeowner's Rehab*, it will not be discussed here. This is because resolution of the present appeal does not turn on matters relating to the tax credit program. Instead, it turns on matters pertaining to judicial review of arbitration awards.

At the heart of the parties' dispute is a contract that includes an arbitration clause (the Arbitration Agreement or Agreement). Relevant to

3

the issues in this appeal are four statements in the Agreement. *First*, a statement that: "The Arbitrator . . . shall endeavor to decide the controversy as though the arbitrator were a judge in a California court of law." *Second*, a statement that: "The award . . . and the findings of the Arbitrator shall be final, conclusive and binding upon the parties, and judgment upon the award and enforcement of any other judgment, decree or order of relief granted by the Arbitrator may be entered or obtained in any court of competent jurisdiction upon the application of any party." *Third*, a statement that: "Notwithstanding the provisions herein, the parties hereto, by submitting the controversy or dispute to arbitration, do not waive or relinquish their rights of appeal and said Partners expressly agree that each Partner shall have the right of appeal as specifically provided in accordance with the laws relating to appeals then in effect in the State of California, as the same may be amended or superseded from time to time; and for such purposes, it is hereby expressly acknowledged and agreed that the parties desire to maintain their right of appeal as an integral part of this Agreement." *Fourth*, a statement that: "Notwithstanding the applicable provisions of California law[,] . . . the decision of the arbitrator and the [arbitrator's] findings of fact and conclusions of law shall be reviewable on appeal upon the same grounds and standards of review as if said decision and supporting findings of fact and conclusions of law were entered by a court with subject matter and present jurisdiction."

After the parties' dispute arose, the plaintiffs initiated a lawsuit by filing in the superior court a complaint asserting several claims against the defendants. Thereafter, following some procedural wrangling, the plaintiffs and defendants entered into a stipulation to submit the dispute to arbitration "pursuant to and in accordance with" the Arbitration Agreement. Then,

4

pursuant to the terms of the stipulation, the proceedings in the superior court were ordered stayed pending conclusion of the arbitration.

While the court proceedings were stayed, the parties participated in an arbitration of the plaintiffs' claims and of counterclaims asserted by the defendants. The arbitration resulted in the issuance of an interim arbitration award, followed by a final arbitration award (the Arbitration Award or Award) denying all of the claims and counterclaims and declining to award attorneys' fees or costs. Thereafter, the plaintiffs returned to the superior court to mount a challenge to the Award. The challenge was a two-pronged challenge in which the plaintiffs filed, in the lawsuit that had been stayed (1) a notice of appeal *to the superior court* and (2) a petition to partially reverse and/or vacate the Award.

After briefing and oral argument on the notice of appeal and the petition to partially reverse and/or vacate, the superior court issued an order discussing and ruling on each of those two modes of challenge. Addressing the notice of appeal first, the superior court commenced its discussion by making two assertions of law. First, the court stated that "an arbitrator's award is not subject to judicial review for mistake of law or mistake of fact unless the parties have limited the arbitrator's powers not to make mistakes of law or fact." Second, the court stated that, in circumstances in which the parties *have* imposed such limits on the arbitrator's power, judicial review on the merits "can only be obtained when the agreement between the parties expressly provides for that review in language that is explicit and unambiguous."

The superior court then reviewed the Arbitration Agreement. So doing, it concluded not only that the language of the Agreement satisfied the "explicit and unambiguous" requirement, but that it did so in a manner that

5

"pointed[ed] to appellate review, not review in the trial court." In the words of the superior court:

> "[T]he Arbitration Agreement states the arbitrator is to act as a superior court trial judge and follow California statutes, case law, and rules of evidence. It also states that the award is binding. [The Agreement] is explicit and unambiguous in stating that either party may appeal the arbitrator's decision 'in accordance with the laws relating to appeals then in effect in the State of California.' [T]he explicit language in this case points to appellate review, not review in the trial court."

On the basis of this analysis (and characterizing the notice of appeal as a "petition" and a "request"), the superior court then concluded this portion of its judgment by ruling (in keeping with arguments of the defendants) that, "[inso]far as the petition requests an appeal to this court of the arbitration award, it is denied."

The court then turned its focus to the petition to partially reverse and/or vacate the Award in part. With regard to this prong of the plaintiffs' challenge, the superior court stated that:

> "As the court does not have the explicit and unambiguous authority under the Arbitration Agreement to preside over *an appeal* of the arbitration award, the court is left with its statutory authority to review under Code of Civil Procedure § 1286.2" (Italics added).

Noting that the scope of review under section 1286.2 is "statutorily limited," the superior court then proceeded to draw what it viewed as a distinction between the scope of review applicable to *it* versus the scope of review applicable to *the Court of Appeal.* In the words of the court:

> "[N]umerous cases illustrate the fact that when exercising its authority under [Code of Civil Procedure section] 1286.2, mistakes of law or fact are not in excess of the

arbitrator's power at this level of review. Using mistakes of law or fact as a basis for an argument that this arbitrator exceeded her power is only available to these parties under the Arbitration Agreement at the appellate level."

The court then went on to engage in some analysis of the arbitrator's findings, before (a) concluding its order by denying in its entirety the petition to partially reverse and/or vacate and by confirming the Award and then (b) issuing a judgment to the same effect.

In this fashion, the superior court in essence ruled that it was powerless to review the Award on the merits, and it confined its review to the statutory grounds set forth in section 1286.2 of the Code of Civil Procedure, leaving unaddressed the plaintiffs' claims that the Award was tainted by errors of fact and law.

## II.
## DISCUSSION

Fundamental to this appeal are two issues: (1) whether a court should review the Arbitration Award on the merits; and, if so, (2) in which court such a review should occur in the first instance. In this case, the parties agree—and, as discussed *post*, so do we—that, in the circumstances presented here, it is appropriate for a court to review the Arbitration Award on the merits. However, they do *not* agree on the court in which such a review should occur in the first instance, and they proceed as though the determination as to which court is to undertake the review in the first instance is a choice that belongs to them. But is it?

### A. The Enforceability of an Agreement to Subject an Arbitration Award to Judicial Review on the Merits

In addressing the first of the two issues we have flagged (whether a court should review the Arbitration Award on the merits), we begin with a discussion of two opinions of the California Supreme Court and one opinion of

7

the United States Supreme Court: *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 (*Moncharsh*); *Cable Connection*, *supra*, 44 Cal.4th 1344; and *Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576 (*Hall Street*).

### 1. Moncharsh

As at least one Court of Appeal has opined, "[a]ny discussion of the scope of a trial court's review of a private arbitration award must begin with *Moncharsh v. Heily & Blase*." (*Baize v. Eastridge Companies, LLC* (2006) 142 Cal.App.4th 293, 300 (*Baize*).) In *Moncharsh*, the California Supreme Court considered the "limited" but perennially vexing "issue of whether, and under what conditions, a trial court may review an arbitrator's decision." (*Moncharsh*, *supra*, 3 Cal.4th at p. 8.) In considering this issue the court discussed, among other things, the importance of "vindicat[ing] the intentions of the parties that the award be final" (*id.* at p. 11) and the importance of the role that legislatively enacted guardrails play in moderating the risks associated with arbitral error. (*Moncharsh*, at pp. 11-13.)

> "[W]e recognize there is a risk that the arbitrator will make a mistake. That risk, however, is acceptable for two reasons. First, by voluntarily submitting to arbitration, the parties have agreed to bear that risk in return for a quick, inexpensive, and conclusive resolution to their dispute." (*Moncharsh*, *supra*, 3 Cal.4th at p. 11.)

> "[S]econd[,] . . . the Legislature has reduced the risk to the parties of such a decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh*, *supra*, 3 Cal.4th at p. 12.)

The judicial review to which the Supreme Court was referring in *Moncharsh* was review pursuant to the terms of the California Arbitration Act (CAA), codified at sections 1280 through 1294.2 of the Code of Civil Procedure. (*Moncharsh*, *supra*, 3 Cal.4th at pp. 12-13, quoting and discussing

8

portions of Code Civ. Proc. §§ 1286.2 and 1286.6.)  But the CAA is not a panacea for arbitral error.  This is because the act does not supply a remedy for *all* forms of arbitral error.  To the contrary, it and its federal counterpart—the Federal Arbitration Act (FAA), codified at section 1 of title 9 of the United States Code et seq.—"provide only limited grounds for judicial review of an arbitration award."[1]  (*Cable Connection*, *supra*, 44 Cal.4th at p. 1344.)

Yet neither the CAA nor the FAA delineates whether those limited grounds for judicial review comprise the *universe* of permissible bases on which a court may vacate an arbitration award.  Thus the California Supreme Court focused its attention on this issue in *Moncharsh*.  And, after examining the CAA and the case law, it arrived at the conclusion that "the California Legislature [had] adopted the position . . . that *in the absence of some limiting clause in the arbitration agreement*, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute [meaning, the CAA]."  (*Cable Connection, supra,* 44 Cal.4th at p. 1340; *Moncharsh, supra*, 3 Cal.4th at p. 25, italics added, quoting *Crofoot v. Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 186.)

---

[1]    "Under both statutes [the CAA and the FAA], courts are authorized to vacate an award if it was (1) procured by corruption, fraud, or undue means; (2) issued by corrupt arbitrators; (3) affected by prejudicial misconduct on the part of the arbitrators; or (4) in excess of the arbitrators' powers."  (*Cable Connection, supra,* 44 Cal.4th at p. 1344 [citing Code Civ. Proc. § 1286.2, subd. (a) and 9 U.S.C. § 10(a)].)

## 2. Hall Street and Cable Connection

Following publication of the Supreme Court's[2] opinion in *Moncharsh*, consensus among the courts of appeal regarding the meaning of the phrase "in the absence of some limiting clause in the arbitration agreement" proved elusive. (See *Cable Connection*, *supra*, 44 Cal.4th at pp. 1345-1347.)[3] Thus courts throughout California and throughout the United States continued to churn with debate over the circumstances under which a court, even with the blessing of the parties, could review an arbitration award on the merits. From one jurisdiction to the next, and even within the same jurisdiction, judges clashed over the question: *Under what circumstances may the scope of judicial review for an arbitration award exceed the grounds set forth in the*

---

[2]    All references in this opinion to "the Supreme Court" or to "our Supreme Court" signify the California Supreme Court. Where the United States Supreme Court is intended, it is referenced as such.

[3]    As the Supreme Court observed in its opinion in *Cable Connection, supra*, 44 Cal.4th at page 1345*:*

> "In the years following the *Moncharsh* decision, our Courts of Appeal have rejected claims that review of the merits was authorized inferentially, by contract clauses stating that ' "[t]he award will be in the form of a statement of decision" ' [citation] or that California law ' "shall govern [the] interpretation and effect" ' of the contract [citation] or that the arbitrator ' "shall apply California law" ' and ' "shall be constrained by the rule of law" ' [citation]. In each of these cases, however, the courts noted that an expanded scope of review *would* be available under a clause specifically tailored for that purpose. [Citation.]
>
> "Nevertheless, when the issue has been squarely presented, no Court of Appeal has enforced a contract clause calling for judicial review of an arbitration award on its merits."

*CAA and the FAA?* (Cf. *Hall Street*, *supra*, 552 U.S. at p. 583, fn. 5 and accompanying text [citing "split" among circuits, "with some saying the (grounds for review set forth in the FAA) are exclusive, and others regarding them as mere threshold provisions open to expansion by agreement"]; see, e.g., *Kyocera Corp. v. Prudential–Bache Trade Services, Inc.* (9th Cir. 2003) 341 F.3d 987, 1000 (en banc) (*Kyocera*) [overruling three-judge panel that had held a federal court could review an arbitration award on grounds beyond those set forth in the FAA].)

Then, in 2008, the United States Supreme Court and the California Supreme Court each put these questions to rest—on opposite sides of the bed. That year, "the United States Supreme Court . . . held that the Federal Arbitration Act [citation] *does not* permit the parties to expand the scope of review by agreement." (*Cable Connection*, *supra*, 44 Cal.4th at p. 1339 (italics added), discussing *Hall Street*, *supra*, 552 U.S. at p. 578 ["We hold that the statutory grounds are exclusive."].) Conversely, the California Supreme Court held that, under the CAA, "the parties *may* obtain judicial review of the merits by express agreement." (*Cable Connection*, at p. 1340 (italics added).) In the words of the Supreme Court:

> "[I]n *Moncharsh* we declared that ' "in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute." ' " (*Cable Connection*, *supra*, 44 Cal.4th at p. 1345.)

11

"We adhere to our holding in *Moncharsh*, recognizing that contractual limitations may alter the usual scope of review. The California rule[4] is that the parties may obtain judicial review of the merits by express agreement." (*Cable Connection*, *supra*, 44 Cal.4th at p. 1340.)

"[T]o take themselves out of the general rule that the merits of the award are not subject to judicial review, the parties must clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts." (*Cable Connection*, *supra*, 44 Cal.4th at p. 1361.)

As a consequence of the developments just described, it now is settled law that (1) the scope of judicial review for an arbitration award under the *Federal* Arbitration Act *is limited* to the grounds set forth in *that* act and (2) the scope of judicial review for an arbitration award under the *California* Arbitration Act is *not limited* to the grounds set forth in *that* act, but instead

---

4      The discrepancy between the rule that the *Cable Connection* majority articulated for judicial review of arbitration awards under California law and the rule that the *Hall Street* majority had laid down earlier the same year for judicial review of arbitration awards under *federal* law is in large measure attributable to a divergence in priorities. Whereas the *Hall Street* majority prioritized pragmatism and statutory construction in its analysis (see *Cable Connection, supra,* 44 Cal.4th at pp. 1352-1353), the *Cable Connection* majority, like the *Moncharsh* majority, prioritized parties' expectations and intent. (*See Cable Connection,* at pp. 1355, 1358.)

may be supplemented via an explicit agreement of the parties.[5]  Yet, as discussed below, to say that the scope of judicial review under the CAA may be supplemented by an agreement of the parties is not to say that there are no limits or that courts are constrained to conform their conduct to whatever methodologies for review the parties might mutually select.

## B.  The Problem with Permitting the Parties to Leapfrog the Superior Court

As Justice Moreno observed in his opinion concurring, dissenting, and (in the Justice's words) merely "stating the obvious" in *Cable Connection:*

> "Although arbitration is created by contract, and the terms of the arbitration are dictated by contractual provisions, courts are not parties to arbitration agreements, and they are not bound by their terms.  Parties can agree that a legal dispute arising from their arbitration will be settled by the California Supreme Court, but this court is not bound by that agreement."

(*Cable Connection, supra,* 44 Cal.4th at p. 1368 (conc. & dis. opn. of Moreno, J.).)  In keeping with the observation of Justice Moreno, it is of course beyond dispute that "[t]he exercise of judicial power cannot be controlled or compelled by private agreement or stipulation" (*Moncharsh, supra,* 3 Cal.4th

---

[5]      The holding of *Hall Street* does not have preemptive effect with respect to the CAA or California case law interpreting that act.  As the *Cable Connection* majority stated:  "*Hall Street's* holding on the effect of the FAA is a limited one." (*Cable Connection, supra,* 44 Cal.4th at p. 1354.)  *Hall Street* "was a federal case governed by federal law," in which "the court considered no question of competing state law." (*Cable Connection,* at pp. 1353-1354.)  "The court unanimously left open other avenues for judicial review, including those provided by state statutory or common law." (*Cable Connection,* at p. 1354 [citing majority and dissenting opinions in *Hall Street*].)  Hence "the *Hall Street* holding is restricted to proceedings to review arbitration awards under the FAA, and does not require state law to conform with its limitations." (*Cable Connection,* at p. 1354.)

13

at p. 35 (conc. & dis. opn. of Kennard, J.)), and that "the parties to any contract are limited in the constraints they may place on judicial review." (*Cable Connection*, at p. 1362 (maj. opn.).) Thus, for example, "an arbitration agreement providing that a 'judge would review the award by flipping a coin or studying the entrails of a dead fowl' would be unenforceable." (*Ibid.*, quoting in part *LaPine Technology Corp. v. Kyocera Corp.* (9th Cir.1997) 130 F.3d 884, 891 (conc. opn. of Kozinski, J.). Equally unenforceable would be an "agree[ment] that a court will have the power to review an arbitral award, but that the review must be accomplished . . . by casting lots." (Cole, *Managerial Litigants? The Overlooked Problem of Party Autonomy in Dispute Resolution* (2000) 51 Hastings L.J. 1199, 1203 [cited in *Cable Connection*, at p. 1363].) "While the parties could certainly agree to resolve their disputes privately by such means, co-opting a judge to employ such procedures presents implications for the courts' institutional integrity." (Cole, *supra*, at p. 1203.)

Thus we arrive at the question: *When parties agree that judicial review of an arbitration award on the merits is to be undertaken in the first instance by the Court of Appeal, rather than by the superior court,*[6] *is the superior court required—or permitted—to step aside?* The superior court in this case answered in the affirmative. In so doing, it erred.

---

[6]     Although we conclude that the Arbitration Agreement allows the Award to be subjected to judicial review on the merits, we express no opinion as to whether the parties here agreed that such a review would be undertaken in the first instance by the Court of Appeal instead of the superior court. Irrespective of what the parties may or may not have agreed in this latter regard, we conclude that it is the superior court, and not the Court of Appeal, that should undertake the review in the first instance. (See *post*.)

As discussed *ante*, in answering in the affirmative, the superior court concluded that it was powerless to review the Arbitration Award on the merits. Its reasoning in this regard was that "the explicit language [of the parties' Arbitration Agreement] points to appellate review, not review in the trial court,"[7] inasmuch as the Agreement not only "is explicit and unambiguous in stating that either party may appeal the arbitrator's decision 'in accordance with the laws relating to appeals then in effect in the State of California,'" but also "states [that] the arbitrator is to act as a superior court

---

[7] We do not embrace the notion that the concepts of "appellate review" and "review in the trial court" are mutually inconsistent. (See *post*.)

15

trial judge."[8] On the basis of this reasoning, the superior court concluded that it was "left [only] with its [limited] statutory authority to review [the Award] under Code of Civil Procedure § 1286.2." Hence the court confined its review to the grounds set forth in the CAA, and it expressed an expectation that a review on the merits would be taken up by the Court of Appeal.

---

[8] The superior court's statement is not an accurate paraphrase of the Arbitration Agreement. The Agreement does *not* say the arbitrator is to act as a superior court trial judge. Instead it says "[t]he Arbitrator . . . shall endeavor to decide the controversy *as though* the arbitrator were a judge in a California court of law" (italics added). This is not a distinction without a difference. A neutral who serves as an *arbitrator* tasked with approaching her work "*as though* [she] were a judge" leads to a jurisdictional path that differs fundamentally from the jurisdictional path traveled when, for example, the same neutral is appointed to act as a temporary judge.

Whereas the end result of the *arbitrator's* work is an award that cannot reach the Court of Appeal without having first passed through the superior court, the end result of the *temporary judge's* work is a judgment that, by operation of the California Constitution, is directly appealable to the Court of Appeal. (See Cal. Const. art. VI, § 21 ["On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause."]; *Union Pacific Railroad Road Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 197 ["A temporary judge's judgments are " ' "appealable in the same manner as those rendered by a constitutional judge." ' "]; *Kajima Engineering and Construction, Inc. v. Pacific Bell* (2002) 103 Cal.App.4th 1397, 1401 [" 'a temporary judge has the power to render a judgment which is appealable in the same manner as one rendered by a constitutional judge' "], quoting *Old Republic Ins. Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 45 Cal.App.4th 631, 635 (*Old Republic*), disapproved on other grounds in *Cable Connection,* 44 Cal.4th at p. 1361); *City of Shasta Lake v. County of Shasta* (1999) 75 Cal.App.4th 1, 11 ["A judgment entered by a temporary judge is a judgment subject to appeal."]; *Old Republic, supra,* at pp. 635-638 [distinguishing between role of arbitrator and role of temporary judge].)

But, in dwelling on the presence in the Agreement of language that it interpreted as "explicit[ly]" and "unambiguous[ly]" calling for judicial review on the merits to occur only in the Court of Appeal, the superior court read into the *Cable Connection* opinion a meaning that isn't there.

We note in this regard, that the *Cable Connection* opinion certainly emphasizes the importance of clarity in arbitration agreements. By way of example, the opinion states in one passage that:

> "[A]n exception to the general rule assigning broad powers to the arbitrators arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers."

(*Cable Connection, supra*, 44 Cal.4th at p. 1356, quoting *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375-376.) The opinion states in another passage that: "The California rule is that the parties may obtain judicial review of the merits by express agreement" (*Cable Connection*, at p. 1340), and it states in yet a third passage that:

> "[P]arties seeking to allow judicial review of the merits, and to avoid an additional dispute over the scope of review, would be well advised to provide for that review explicitly and unambiguously."

(*Id.* at p. 1361; see generally *Cable Connection, supra*, 44 Cal.4th at pp. 1340, 1356-1358, 1360-1361, and 1363 [deploying the words "express," "expressly," "explicitly," and "unambiguously" in no less than 10 locations to emphasize the importance of clarity].)

But as these selected passages reveal, the topic to which *Cable Connection*'s emphasis on clarity was addressed was the circumstances under which a court should recognize and implement an agreement to permit a certain type of judicial review—not the circumstances under which a court should implement an agreement designating in which court or courts that

17

review should occur. Whereas the Supreme Court has indeed indicated that ambiguity will undermine a mutual intention to permit judicial review on the merits, it has not empowered parties to choose their preferred appellate forum, no matter how clearly their preference might be stated.

In its examination of the topic of contractually expanded judicial review of arbitration awards, *Cable Connection* discussed two opinions from the courts of appeal that are particularly instructive here: *Old Republic Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, *supra*, 45 Cal.App.4th 631 and *Crowell v. Downey Community Hospital Foundation* (2002) 95 Cal.App.4th 730 (*Crowell*), each disapproved in part in *Cable Connection*, *supra*, 44 Cal.4th at page 1361 (maj. opn.).

In *Old Republic*, the court was presented with an agreement that "the trial court could review [an arbitration] award on statutory grounds [i.e., the grounds set forth in the CAA] but the appellate court [bypassing the superior court] could review its merits." (*Crowell*, *supra*, 95 Cal.App.4th at p. 739, discussing *Old Republic*, *supra*, 45 Cal.App.4th at pp. 634-635.) In other words, the court was confronted with an agreement providing for precisely the same sort of split review that the defendants have advocated, and the superior court has embraced, in the *present* case. Despite the plain language of the parties' agreement, the court "refused to review the merits." (*Cable Connection*, *supra*, 44 Cal.4th at p. 1346.)

The principal ground on which the court in *Old Republic* refused to review the award's merits was a conclusion (subsequently disapproved by the

18

Supreme Court in *Cable Connection*[9]) that contractual agreements to expand judicial review of arbitration awards beyond the protections of the CAA were unenforceable. But the *Old Republic* court observed that:

> "Even if we were to [conclude that judicial review on the merits was permissible], the limitations [that the parties] placed upon the powers of the trial court would likewise preclude appellate review. By the terms of their stipulation, the parties attempted to cut out the middleman: the trial judge. They agreed to preclude him from considering whether [the arbitrator's] decision was based on legal error. The effect of their stipulation . . . would be to place upon this court the duty to perform a function which, in the first instance, is assigned to the trial judge."

(*Old Republic*, *supra*, 45 Cal.App.4th at p. 638.) The court then went on to say:

> "Although we feel honored by the parties' assumption we are more capable of performing this task than the court constitutionally assigned to perform this duty in the first

---

[9] As discussed above, in 2008, the United States Supreme Court and the California Supreme Court issued opinions—*Hall Street* (from the United States Supreme Court) and *Cable Connection* (from the California Supreme Court)—that came out on opposite sides of the long-simmering debate over whether there were circumstances in which a court, even with the parties' blessing, could review an arbitration award on the merits. It was in essence because *and only to the extent* that the side of the debate on which the *Old Republic* court came down was the side on which the United States Supreme Court later came down in *Hall Street,* rather than the side on which the California Supreme Court came down in *Cable Connection,* that the California Supreme Court in its *Cable Connection* decision disapproved the opinion in *Old Republic.* (See *Cable Connection, supra,* 44 Cal.4th at p. 1361 [holding that "[t]hose Court of Appeal opinions refusing to enforce specific provisions for judicial review of the merits are disapproved insofar as they conflict with our analysis"] (citing *Old Republic, supra,* 45 Cal.App.4th at pp. 638-639 and *Crowell, supra,* 95 Cal.App.4th at p. 735 (maj. opn.)).)

19

place, an assumption we do not necessarily share, we respectfully decline to accept the favor their stipulation seeks to impose on us."

*Ibid.*

Commenting on this observation, a justice of another Court of Appeal—writing a dissent after having declared himself in favor of the view that would later come to be embraced by the Supreme Court in *Cable Connection*—opined in the *Crowell* case that:

> "The shortcoming of the arbitration provision in *Old Republic* was not that the parties agreed to greater review of the arbitrator's award than provided in the [California Arbitration] Act, but that they sought to agree to jurisdiction of the appellate court and sidestep the trial court."

(*Crowell, supra,* 95 Cal.App.4th at p. 748 (dis. opn. of Nott, J.).)[10] "[T]he parties could not confer jurisdiction on the Court of Appeal where none existed," wrote the dissenting justice in *Crowell* (*ibid.*, citing *Old Republic, supra,* 45 Cal.App.4th at p. 639); "[n]or [could they] 'leapfrog' over the trial court to have immediate appellate review." (*Crowell,* at p. 740 (dis. opn. of Nott, J.).)

The matter as to which the justices authoring the above-quoted passages were expressing concern was not merely a trifling matter of judicial etiquette; it was—and is—a constitutional matter of original versus appellate jurisdiction in our state's courts. In California, jurisdiction is a matter of constitutional import. Indeed, it is "from the constitution of th[is] state" that "[t]he courts of this state derive their . . . jurisdiction." (*Pacific Telephone etc.*

---

10  The California Supreme Court, in its opinion in *Cable Connection,* discussed the dissenting opinion in *Crowell* at some length before disapproving the *Crowell* majority opinion. (See *Cable Connection, supra,* 44 Cal.4th at pp. 1346-1347, 1361.)

20

*Co. v. Eshleman* (1913) 166 Cal. 640, 690 (*Pacific Telephone*) (conc. opn. of Sloss, J.); accord *In re Perris City News* (2002) 96 Cal.App.4th 1194, 1197 (*Perris City News*).)

The state's constitution delimits the jurisdiction of the state's courts, in part, by declaring that, whereas the courts of appeal have original jurisdiction in habeas corpus proceedings and on writs for extraordinary relief, "*[t]he [s]uperior courts have original jurisdiction in all other causes.*" (Cal. Const. art. VI, § 10 (italics added).)  Thus, inasmuch as the review of an arbitration award on the merits (or otherwise) is neither a habeas corpus proceeding nor a writ for extraordinary relief, it follows that the Court of Appeal is without the *original* jurisdiction that is required in order for a court to be empowered to undertake such a review in the first instance.

A Court of Appeal does have *appellate* jurisdiction with regard to review of an arbitration award.  This is because the state Constitution provides that, "except where judgment of death has been pronounced, *the Court of Appeal has appellate jurisdiction when superior courts have original jurisdiction.*"  (*People v. Hawes* (1982) 129 Cal.App.3d 930, 935, citing Cal. Const. art. VI, § 11 (italics added).)  But, as our Supreme Court has stated, the "power [of the courts of appeal] may not be extended beyond the jurisdiction conferred by the Constitution." (*Sanborn v. Pacific Mutual Life Ins. Co.* (1940) 42 Cal.App.2d 99, 105.)  Hence the existence of the Court of Appeal's *appellate* jurisdiction does not render the superior court at liberty to refrain from exercising its *original* jurisdiction on a theory that the parties have agreed to proceed "as though" that original jurisdiction had been vested

21

in an arbitrator instead.[11] Rather, to the contrary, "when a certain jurisdiction has been conferred on this or any court, it is the *duty* of the court to exercise it." (*People v. Jordan* (1884) 65 Cal. 644, 646 (italics added).)

So inviolable are these principles that our Supreme Court has stated that "constitutional jurisdiction can neither be restricted nor enlarged by legislative act." (See *Pacific Telephone, supra,* 166 Cal. at p. 690 (conc. opn. of Sloss, J.); accord *Perris City News, supra,* 96 Cal.App.4th at p. 1197.) Nor, by the same token, may it be restricted or enlarged by an agreement or

---

[11] It is one thing to say an arbitrator is to approach her task no differently than she would if she were a superior court judge. It is another thing entirely to say that the courts must treat the arbitrator's award as though its substance were a judgment of the superior court that could be directly appealed to the Court of Appeal. Cf. *ante,* fn. 8.

stipulation of the parties.[12]  (See *Hill v. City of Clovis* (1998) 63 Cal.App.4th 434, 446 ["parties . . . cannot create by stipulation appellate jurisdiction where none otherwise exists"]; accord *Hoveida v. Scripps Health* (2005) 125 Cal.App.4th 1466, 1468 [same]; *Don Jose's Restaurant, Inc. v. Truck*

---

[12]  In the passages of their briefs discussing in which court a review of the Award on the merits should occur in the first instance, the parties frame the issue primarily as a matter of interpreting the Arbitration Agreement, rather than as a matter of examining the courts' fundamental jurisdiction. Addressing the issue through the lens of contractual interpretation, the parties focus substantial attention on the interpretation that the Second District Court of Appeal, in *Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523 (*Harshad*), gave to a contract in which the parties had agreed to expand the scope of judicial review of an arbitration award beyond the scope set forth in the CAA.  But *Harshad* is not particularly illuminating in the circumstances presented here inasmuch as the agreement at issue in *Harshad,* unlike the agreement at issue here, stated in terms that were express and unambiguous that the court that was to take first crack at a review on the merits was *the superior court.*  (See *Harshad,* at pp. 530-531 [arbitration agreement stated:  " 'the decision of the [a]rbitrator and the findings of fact and conclusions of law shall be reviewed on appeal to the trial court and thereafter to the appellate courts' "].)  Hence the interpretation given to the arbitration agreement in *Harshad* is of no assistance to us in analyzing the jurisdictional and constitutional concerns that impel the result we reach here.

Also of no assistance to us are two additional opinions the defendants have cited:  *Oaktree Capital Management, L.P. v. Bernard* (2010) 182 Cal.App.4th 60 and *Baize, supra,* 142 Cal.App.4th 293.  The cases in which those opinions issued are distinguishable from the situation that confronts us here for the simple reason that the courts in those cases did not grapple with the issue of which court, as between the superior court and the Court of Appeal, should be the one to undertake an expanded review of an arbitration award in the first instance.  Rather, in each of those cases, the Court of Appeal determined that the arbitration award at issue should not receive an expanded scope of review *at all* because, those courts concluded, the parties' arbitration agreements had failed to expressly provide for an expanded scope of review.  (See *Oaktree,* at p. 71; *Baize,* at p. 301.)

23

*Insurance Exchange* (1997) 53 Cal.App.4th 115, 118-19 [same]; cf. *In re Marriage of Lafkas* (2007) 153 Cal.App.4th 1429, 1432 (*Lafkas*); *People ex rel. Sneddon v. Torch Energy Services, Inc.* (2002) 102 Cal.App.4th 181, 188 ["[s]ubject matter jurisdiction can never be created by consent"], quoting *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 47].)  As our Supreme Court has stated with respect to courts on the whole, but in words that have application to each individual type of court as well:  "An attempt to take away from the courts judicial power conferred upon them by the constitution, or to impose on them judicial powers not granted or authorized to be granted by the constitution is void." *Pacific Telephone*, *supra*, at p. 690 (conc. opn. of Sloss, J.); accord *Perris City News*, *supra*, at p. 1197.

Here, the superior court entered an order confirming and declining to vacate the Arbitration Award, such that a judgment could be entered and appealed.  But it erred when it concluded the parties were at liberty to ordain in which court the review on the merits should occur in the first instance, and when it concluded it was constrained to yield in this regard to what it understood to be the parties' intent.  As a consequence, the judgment entered is not informed by the type of comprehensive review and assessment of the record that the Arbitration Agreement (calling for a review on the merits)

24

contemplates,[13] and thus does not resolve the issues presented by the parties.  Hence the judgment is inherently incomplete and must be reversed.

---

[13]     Some might object that trial courts should not be burdened with a scope of review that customarily is the province of the courts of appeal.  Adherents of such a view might point out that trial courts shoulder high caseloads with limited resources or are otherwise not configured to hear appeals.  Indeed, as a justice of our own Supreme Court has opined:  "Parties who agree to resolve their disputes by arbitration should not . . . expect busy trial courts to comb the records of arbitration proceedings to determine whether any error has occurred and, if so, the effect of the error." (*Moncharsh, supra,* 3 Cal.4th at p. 35 (conc. & dis. opn. of Kennard, J.).)

But, to the contrary, existing precedents appear to suggest that parties should expect *precisely* that.  In this regard, a superior court undertaking an appellate review on the merits for errors of fact or law is nothing out of the ordinary in California.  As the dissent in *Crowell, supra,* pointed out, trial-level courts routinely function in an appellate capacity—as they do for, example, in ruling on writs.  (See *Crowell, supra,* 95 Cal.App.4th at p. 741 (dis. opn. of Nott, J.) [noting that "review . . . based on sufficiency of the evidence and/or errors of law" is "a standard often employed by a trial court in ruling on a petition for administrative mandamus"]; cf. *Bixby v. Pierno* (1971) 4 Cal.3d 130, 144 [on review of agency decision by writ of mandamus, "the trial court must . . . review the entire administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law"]; *Stanford Vina Ranch Irrigation Co. v. State of California* (2020) 50 Cal.App.5th 976, 996; *Malaga County Water District v. State Water Resources Control Board* (2020) 58 Cal.App.5th 447, 479 [the "trial court and this court are obligated to review the entire administrative record to determine whether substantial evidence supports the [agency]'s decision"]; accord *Poncio v. Department of Resources Recycling & Recovery* (2019) 34 Cal.App.5th 663, 669 [scope of a trial court's review of an agency adjudication is no different than that of a Court of Appeal, citing *Bixby*, at p. 149].)

25

## C. Whether to Remand

Ordinarily our inquiry would not end with a conclusion that the superior court had erred. Instead, we would proceed to undertake a more comprehensive review to ascertain the effect of the superior court's error, i.e. to determine whether the result would have been different had the error not occurred. And, if we were to determine from that review that the result would *not* have been different, then we would affirm notwithstanding the error. (See generally *People v. Watson* (1956) 46 Cal.2d 818, 834-835; see also Code Civ. P. § 475 [judgment should not be reversed by reason of error unless the record shows that the error was prejudicial, that the appellant suffered substantial injury, and that a different result would have been probable in the absence of the error)]; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 ["we must determine whether it is reasonably probable [that the appellant] would have achieved a more favorable result in the absence of [the superior court error]"].)

Here, however, we feel constrained to refrain from traveling the ordinary path because the judgment is inherently incomplete. The superior court having not exercised the *original* jurisdiction that obligated it to undertake a review of the Award on the merits in the first instance, we deem

---

The holding of the Supreme Court in *Cable Connection,* moreover, is in accord with this observation. In *Cable Connection,* the Supreme Court did not take the superior court to task for reviewing an arbitration award on the merits. To the contrary, it reversed *the Court of Appeal* for "holding that the trial court exceeded its jurisdiction by reviewing the merits of the arbitrators' decision." (*Cable Connection, supra* 44 Cal.4th at p. 1343.)

26

it premature for us to further exercise *our appellate* jurisdiction by now undertaking that review ourselves.[14]

In deciding to travel this alternative path, we find the opinions of several other courts (in addition to the opinion in *Old Republic*, discussed *ante* instructive. One such opinion is that of the Supreme Court of Nevada in *Casey v. Wells Fargo Bank, N.A.* (Nev. 2012) 290 P.3d 265 (*Casey*). In that case, the Supreme Court of Nevada, in reversing a judgment confirming an arbitration award, "decline[d the appellant's] invitation to reach the merits" because it concluded that "it is for the [trial] court on remand to decide the merits . . . in the first instance." (*Id.* at p. 266, fn. 1.)

To similar effect[15] is the opinion of the Ninth Circuit Court of Appeals in *Johnson v. Wells Fargo Home Mortgage, Inc.* (9th Cir. 2011) 635 F.3d 401

---

[14]    This is not to say we have undertaken no review at all. As can be seen, we have reviewed the record for the limited purposes of acquainting ourselves with the factual and procedural background of this case and, in particular, examining the superior court's procedural handling of the plaintiffs' appeal. But we have not reviewed the record for the broader purpose (which we have determined is the province of the superior court) of ascertaining in the first instance whether substantial evidence supports the Award or whether the Award is contrary to law.

[15]    We note that, while the proceedings in *Johnson* and the proceedings in the present case share important similarities, they nonetheless deviate from one another in significant respects. As an example: *Johnson* proceeded under the Federal Arbitration Act and the Federal Rules of Civil Procedure, whereas the present case is governed by the *California* Arbitration Act and *California's* Code of Civil Procedure. As another example: The trial court in *Johnson* did not review the arbitration award in that case *at all,* (see *Johnson, supra,* 635 F.3d at p. 411 [characterizing the trial court as having "abdicate[d] entirely its role in reviewing the arbitrator's award"]), whereas in the present case the trial court did review the award, but, in doing so, employed an unduly narrow scope of review.

27

(*Johnson*). In *Johnson*, the parties had entered into an arbitration agreement providing in pertinent part that the "parties shall participate in a binding arbitration with appeal rights." (*Id.* at p. 406, quoting arbitration agreement.) The district court interpreted this language to mean:

> "that ... following the arbitration the [district court] would approve the arbitrator's award, enter judgment, and whichever party was unhappy at that point could [then] appeal the record to the Ninth Circuit, and the issues would not be raised with the district court, [but instead] would be preserved for the Ninth Circuit."

(*Johnson*, at p. 407.) On the basis of this interpretation, the district court granted a motion to confirm the award, but "did not [otherwise] review [the] . . . award when presented with motions" calling for it to do so, and "instead passed initial review of the award onto th[e] appellate court." (*Id.* at p. 404.) The Ninth Circuit concluded, much as we do here, "that the District Court's decision not to review the arbitrator's award was erroneous." (*Id.* at p. 409.)

Having thus found fault in the order of the district court declining to review the award, the Ninth Circuit then proceeded to pose the question: "[S]hould *we* [now] review the arbitrator's award and then reverse or affirm the District Court's confirmation of the award, considering on their merits the grounds for vacating the award that the District Court did not address?" (*Johnson*, *supra*, 635 F.3d at p. 409 (italics added).) The Ninth Circuit then proceeded to answer the question it had posed in the negative:

> "Such affirmance (or reversal) of the District Court on the . . . ground that the arbitrator's decision merited (or did not merit) confirmation would, as a practical matter, work a circumvention of the jurisdictional statutes that generally limit this Court to deciding appeals of district court decisions (or petitions for review of agency determinations). For if we reviewed the arbitrator's award to determine whether there is an alternative basis for upholding the District Court's confirmation of the award, we would give

28

effect to precisely what the District Court improperly
intended:  judicial review in the first instance in the Court
of Appeals."

*Ibid.*

Having answered its question in this fashion, the Ninth Circuit decided that, "[t]o avoid the circumvention just described, we will not now review the award in the first instance, but [instead will] remand to the District Court for it to do so."  *Johnson, supra*, 635 F.3d at p. 409.

Explaining why it was proceeding in this fashion, the Ninth Circuit then stated "it [had been] procedurally improper for the District Court to decline to review the arbitrator's award" (*Johnson, supra*, 635 F.3d  at p. 409) because, even if the parties had agreed to such a procedure (the Ninth Circuit concluded the parties had *not* agreed to such a procedure), "neither the District Court nor the parties were *empowered* to authorize it."  *Ibid.* (italics added).  Having thus notably framed the issue as a matter of "power" (rather than jurisdiction), the Ninth Circuit then stated that "*[t]he District Court was . . . without power* to abdicate entirely its role in reviewing the arbitrator's award . . . because of the terms of the parties' agreement" (*Johnson, supra*, 635 F.3d  at p. 411, italics added).  And, as a consequence, the Ninth Circuit decided:

> "[W]e decline to review the arbitrator's award ourselves
> and then affirm or reverse the District Court's order on
> the . . . ground of the award's substantive merits.  Instead,
> we exercise *our power* to remand the case to the District
> Court with directions to rule on the motion to vacate, as it
> should have done in the first instance."

*Id.* at p. 408 (italics added).  The Ninth Circuit further opined that:

> "We should not, and will not, permit the Congressionally-
> established structure of the federal courts to be so
> circumvented.  We therefore reverse and remand to allow

29

the lower court to review the arbitrator's award before we
do so ourselves."

(*Id.* at p. 404.) "[W]e will not permit a privately-selected arbitrator to act as a private judge whose rulings are directly reviewed by this Court." (*Id.* at p. 408.)

Of course, as noted above (see *ante*, fn. 15), *Johnson* is a federal case that was decided with reference to the FAA and principles of federal statutory jurisdiction, rather than with reference to the CAA and principles of California constitutional jurisdiction. Hence we round out our consideration of the topic of whether or not to remand with reference to an analogous situation described in an opinion from the California courts— specifically, the opinion of the Third District Court of Appeal in a set of three coordinated cases known as the *Quantification Settlement Agreement Cases* (the "*QSA Cases*").

In its opinion in the *QSA Cases*, the Court of Appeal examined a situation in which "the trial court [had] dismissed . . . two . . . actions as moot, without adjudicating any of the claims in those actions." *QSA Cases*, *supra*, 201 Cal.App.4th 758, 775. "[T]he proponents of those actions contend[ed] the trial court erred in dismissing [the cases] as moot, and they importune[d] [the Court of Appeal] to adjudicate their . . . claims in the first instance, to avoid further delay, while [their] opponents contend[ed] those matters must be addressed by the trial court on remand." *Ibid.*

Examining the situation, the Court of Appeal "conclude[d] that the trial court [had] erred in finding the . . . actions moot." *QSA Cases*, *supra*, 201 Cal.App.4th at 776. In that case, as in this case:

> "[The parties advocating for adjudication by the Court of
> Appeal in the first instance did not] offer[] any authority for
> the proposition that [the Court of Appeal], in the exercise of
> its appellate jurisdiction [citation], can or should decide in

30

the first instance an issue that . . . is within the original jurisdiction of the superior court."

*QSA Cases*, *supra*, 201 Cal.App.4th at p. 844.

In the absence of such authority, the Court of Appeal declined to reach the merits:

> "To the extent [the parties argue that] we should . . . take the further step of adjudicating the merits . . . ourselves— something the trial court itself never reached—[they] have not proven to our satisfaction that we are authorized to do so in the exercise of our appellate jurisdiction."

*QSA Cases*, *supra*, 201 Cal.App.4th at p. 844. On the basis of these observations, the Court of Appeal reversed the judgments in the two actions, "but . . . decline[d] to adjudicate those actions in the first instance and instead . . . remand[ed] those actions to the trial court for adjudication." (*Id.* at p. 776.)[16]

---

[16]    We note that the Court of Appeal in the *Harshad* case, discussed *ante,* at fn. 12, traveled a path that is different from the path that the appellate courts in *Old Republic, supra,* 45 Cal.App.4th 631; *Casey, supra,* 290 P.3d 265; *Johnson, supra,* 635 F.3d 401; and *QSA Cases, supra,* 201 Cal.App.4th 758 traveled, and that we travel here. In *Harshad,* the Court of Appeal examined an agreement that was like the Arbitration Agreement at issue here in that it expanded the scope of judicial review of an arbitration award beyond the scope set forth in the CAA. So doing, the Court of Appeal in *Harshad* concluded, as we do here, that the superior court had erred in failing to review the award on the merits. (*Harshad, supra,* 14 Cal.App.5th at p. 534.) But, rather than reverse the judgment and remand the matter to the superior court with instructions to undertake a review of the award on the merits, the Court of Appeal instead proceeded to undertake such a review itself. (See *id.*, at pp. 537-550.) The *Harshad* opinion reveals no indication that, in traveling this path, the Court of Appeal in that case considered instructing the superior court to undertake such a review itself.

We do not go quite so far as the Third District went in its opinion in the *QSA Cases*. That is to say, we do not conclude (as the Court of Appeal concluded in the *QSA Cases)* that we may be without *authority* to undertake a review on the merits in the first instance. As discussed *ante*, the California Constitution *does* vest us with appellate jurisdiction in this matter.[17] (Cf. *Johnson*, *supra*, 635 F.3d at p. 408 [concluding, albeit based on federal statutory law rather than California constitutional law, that district court's "procedural error" in "declin[ing] to review the arbitrator's award but nonetheless enter[ing] an order confirming that award in the expectation that review would begin in [the Ninth Circuit]" "d[id] not deprive [the Ninth Circuit] of jurisdiction"].) And we conclude that, with that appellate jurisdiction and the rule of *People v. Watson*, discussed *ante*, comes the requisite authority to undertake a review on the merits in the first instance. However, in deciding how and when to exercise our appellate jurisdiction and authority with respect to the matters addressed in the judgment, we simply deem it premature for us to exercise them now—other than for the purpose of reversing the judgment, and remanding with instructions, for the reasons stated herein.

---

[17] Although the parties have not framed the issue at hand as a matter of jurisdictional or constitutional dimension, we nonetheless must examine it as such. (See *Perris City News*, *supra*, 96 Cal.App.4th at p. 1197 ["Whenever there is doubt as to whether we have jurisdiction to hear an appeal, we must raise that issue on our own initiative."]; accord *Lafkas*, *supra*, 153 Cal.App.4th at p. 1432; *Porter v. United Services Automobile Association* (2001) 90 Cal.App.4th 837, 838 ["We have the duty to raise issues concerning our jurisdiction on our own motion."]; *Harris v. Moore* (1929) 102 Cal.App. 413, 413 ["Inasmuch as the jurisdiction of this court in proceedings brought before us is fundamental, we are required to determine the question of our authority to review them, although it be not raised by the parties."].)

This of course is not to say the parties will have no audience with this court after (1) the superior court has completed a review of the Award on the merits; (2) a new judgment has been entered; and (3) a further appeal has been timely filed—in other words, when the time is ripe for us to engage in a further exercise of our appellate jurisdiction. That time, however, is not now. (Cf. *Hill v. City of Clovis* (1998) 63 Cal.App.4th 434, 446 ["appellants retain the right of appellate review at the appropriate time, but not earlier"].)

## III.
## DISPOSITION

The judgment is reversed, and the case is remanded with instructions to the superior court to review the Arbitration Award on the merits.


KELETY, J.

WE CONCUR:


McCONNELL, P.J.


CASTILLO, J.